UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN CHRISTOPHER BARLETTA,      :
  plaintiff,                     :
                              :          PRISONER
    v.                            :   Case No. 3:10-cv-939 (AVC)
                              :
ANGEL QUIROS, et al.,           :
  defendants.                    :

## RULING AND ORDER

The plaintiff, incarcerated and pro se, has filed a complaint under 42 U.S.C. § 1983, challenging various aspects of his confinement.  The defendants move to dismiss the amended complaint on several grounds.  For reasons that follow, the defendants' motion is granted and any remaining claims are dismissed pursuant to 28 U.S.C. § 1915A.

### Facts

A review of the amended complaint reveals the following facts.  In July 2009, the plaintiff was confined in a Maryland prison pursuant to the Interstate Corrections Compact.  He returned to Connecticut on July 22, 2009.  A few days before his return, former warden McGill and defendants Hines, Aldi and Lajoie determined that, upon his return, the plaintiff would be placed on high security status.  When he arrived in Connecticut, the plaintiff also was placed on Administrative Segregation status, without a hearing, despite the fact that he had not been charged with any disciplinary infractions.  He was released from

Administrative Segregation status on February 10, 2010, after
remaining disciplinary report free for six months.  The plaintiff
also was placed on loss of razor status.  Administrative
segregation status resulted in the denial of programs, property
and privileges.  High security status resulted in daily mail
review, daily cell searches and cell changes every ninety days.

Upon his arrival in Connecticut, all of the plaintiff's
"religious" literature was confiscated.  On June 23, 2009, the
plaintiff was placed on gang member status because of his
purported religion and "religious" materials.  On June 26, 2009,
defendants Hines, Aldi and McCormick informed the plaintiff that
his "religious" materials, news and music magazines, political
books and various newsletters were being confiscated pursuant to
a policy banning, *inter alia*, materials from the Church of the
Creator, National Alliance and Resistance Rock magazine.  Other
publications on history and philosophy also were confiscated for
review by the Media Review Board.  On November 17, 2009,
defendant Powers delivered to the plaintiff thirty-eight notices
of rejected publications.  All rejections were based on threats
to institutional safety and security.

On July 13, 2009, the plaintiff received a disciplinary
charge for expressing beliefs from the Church of the Creator.  He
was found guilty of the charge.  The hearing officer disagreed
with the plaintiff's characterization of the Church of the

2

Creator as a religion and found it to be a gang.  The plaintiff believes that defendants Weir, Powers, Hines, Aldi and McCormick are using their false characterization of the Church of the Creator to punish the plaintiff.

On February 26, 2010, while he was gathering information to file this action, defendants Bowman, McIntyre and Sledgelowski searched his cell and confiscated legal documents.  The plaintiff contends that this action interfered with his right of access to the courts.  Around this time, six other publications also were confiscated.

Since his return from Maryland, defendants Quiros, Siwicki, Hines and Colon have been interfering with the plaintiff's mail. Letters to his mother and friends have not reached the intended destinations.  Incoming mail has been held for a few weeks before being rejected.  The plaintiff was able to correspond with these persons while confined in Maryland.  The notice of confiscation of mail indicated that the Department of Correction determined that the mail was racially biased and promoted hate speech. Defendants Quiros and Lajoie denied the plaintiff's grievances on this issue.

The plaintiff alleges generally that the defendants retaliated against him for continuing to file grievances regarding the confiscation of his mail and property.  On August 18, 2010, the plaintiff received a disciplinary report for making

threats to correctional staff during a social telephone call. The disciplinary hearing officer determined that the plaintiff was not threatening staff but let the charge stand as a general charge of threats.  As a result, the plaintiff was confined in a strip cell for twenty days, lost phone and visiting privileges for four months and was required to recreate alone in full restraints.  The plaintiff was on recreate-alone status at the time he filed the amended complaint.

On September 3, 2010, the plaintiff was placed in a cell with non-working electrical and cable fixtures.  Defendants Quiros, Powers and Siwicki were aware of the problem.  The problem was not corrected for 2½ months.

Since his return from Maryland, the plaintiff has encountered problems retrieving his property stored in the property area.  Defendant Kitt ignored his requests for his property and only returned a few items when he pressed the issue.

### Standard

When considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Flores v. Southern Peru Copper Corp., 343 F.3d 140, 143 (2d Cir. 2003).  The court considers not whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief

may be granted so that he should be entitled to offer evidence to support his claim.  See York v. Association of Bar of City of New York, 286 F.3d 122, 125 (2d Cir.), cert. denied, 537 U.S. 1089 (2002).

In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal, 556 U.S. at 678).  Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).  Even under this standard, however, the court liberally construes a pro se complaint.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Boykin v. KeyCorp, 521 F.3d 202, 213-14, 216 (2d Cir. 2008).

## Discussion

The plaintiff includes ten counts in his amended complaint: (1) violation of his First Amendment right to free exercise of

religion; (2) violation of Section 3 of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc; (3) violation of state law concerning religious freedom; (4) violation of due process regarding placement on Administrative Segregation status; (5) violation of due process regarding placement on gang member status; (6) violation of equal protection regarding denial of magazines; (7) violation of his right of access to the courts; (8) violation of his First Amendment right to correspond with friends; (9) harassment and retaliation; and (10) deprivation of property.  The plaintiff seeks declaratory and injunctive relief as well as damages.

The plaintiff includes various factual allegations in the amended complaint but does not indicate which allegations are relevant to each count.  The court considers any factual allegations not specifically related to one of the counts to be part of the plaintiff's more general claim of harassment and retaliation for his "religious" beliefs.

The defendants move to dismiss the amended complaint on six grounds: (1) the plaintiff failed to serve the amended complaint on newly added defendants; (2) the plaintiff's religious claims are without merit; (3) the plaintiff's classification is based on his past violent history and present threat and does not raise any constitutional issues; (4) the plaintiff's claims of discrimination or retaliation are conclusory; (5) suits for money

damages are not cognizable under RLUIPA; and (6) the defendants are protected by qualified immunity. The court considers the motion to dismiss as it applies to the ten counts listed in the amended complaint.

A. Service of the Amended Complaint

The defendants first argue that the amended complaint was not served on seven newly added defendants, Hines, Bowman, McIntyre, Sledgelowski, Siwicki, Kitt and Colon. The defendants are incorrect. All of these defendants were served in their official capacities by summons and all of the defendants, except Sledgelowski, returned signed waivers of service of summons in their individual capacities. Despite this, counsel has yet to file an appearance for defendants Hines, Bowman, McIntyre, Siwicki, Kitt and Colon in their individual capacities and all seven defendants in their official capacities. The motion to dismiss is denied on this ground.

B. Claims for Declaratory and Injunctive Relief

The defendants argue that the plaintiff's claims for declaratory and injunctive relief are without merit. The court notes that the plaintiff is no longer is confined in Connecticut. An inmate's request for declaratory and injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional

institution.  See Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir.
1976); Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983)
(holding that "[t]he hallmark of a moot case or controversy is
that the relief sought can no longer be given or is no longer
needed").  Court records reveal that the plaintiff now is
confined at a correctional facility in Oregon.  Thus, the claims
for declaratory and injunctive relief are moot and the
defendants' motion to dismiss is granted as to these claims.

    C.   Classification Claim

    The plaintiff argues that his placement on Administrative
Segregation status violates his right to due process.  The
defendants move to dismiss this claim because the plaintiff has
no protected liberty interest in remaining free from
Administrative Segregation status.

    To prevail on a due process claim, the plaintiff must show
that he had a protected liberty interest and that he was not
afforded the requisite process before he was deprived of that
interest.  See Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000).

    Connecticut prisoners do not have a protected liberty
interest in their classifications because the Commissioner of
Correction has discretion to classify prisoners.  See Pugliese v.
Nelson, 617 F.2d 916, 923 (2d Cir. 1980); Torres v. Howell,
3:03cv2227(MRK), 2006 WL 1525942, at *15-16 (D. Conn. May 30,
2006); Beasley v. Commissioner of Correction, 50 Conn. App. 421,

718 A.2d 487 (1998), aff'd, 249 Conn. 499, 733 A.2d 833 (1999);
see also Moody v. Daggett, 429 U.S. 78, 99 n.9 (1976)
(recognizing that federal prisoners have no protected liberty
interest in classification).  Because the plaintiff does not have
a protected liberty interest in his classification under either
federal or state law, he fails to state a cognizable due process
claim based on his transfer to administrative segregation.  See
Hamer v. Arnone, No. 3:11-cv-279(SRU), 2011 WL 2680836, at *3 (D.
Conn. Jul. 7, 2011) (holding that the plaintiff had no protected
liberty interest in his classification and could not state a due
process claim based on transfer to administrative segregation or
alleged hearing improprieties).  Therefore, the defendants'
motion to dismiss is granted as to the classification claim.

     D.   RLUIPA Claim

     The court already has dismissed all claims for declaratory
and injunctive relief.  Thus, damages are the only available
remedy left to the plaintiff.  The defendants argue, however,
that damages may not be recovered from individuals in either
their individual or official capacities for violation of RLUIPA.

     District courts within this circuit have held that damages
claims for violation of RLUIPA are not cognizable against
individuals in either capacity.  See, e.g., Singh v. Goord, No.
05 Civ. 9680, 2010 WL 1903997, at *3 (S.D.N.Y. May 10, 2010),
(holding that RLUIPA does not allow recovery of damages in

official or individual capacity), aff'd sub nom. Singh v. Lynch, 460 Fed. App'x 45 (2d Cir. 2012); El Badrawi v. Department of Homeland Security, 579 F. Supp.2d 249, 261 (D. Conn. 2008) (recognizing that RLUIPA does not abrogate Eleventh Amendment immunity); Bock v. Gold, No. 05-CV-151, 2008 WL 345890, at *1 (D. Vt. Feb. 7, 2008) (holding that RLUIPA does not allow recovery for damages in individual or official capacity).

The courts rely on the fact that Congress enacted RLUIPA pursuant to its spending power. Such legislation is like a contract in which the state agrees to comply with certain conditions in exchange for federal funds. As individual state actors are not the recipients of the funds, damages cannot be sought from such individuals. See Pugh v. Goord, 571 F. Supp.2d 477, 507 (S.D.N.Y. 2008). With regard to official capacity claims, the courts have determined that the language of RLUIPA is not sufficiently unequivocal so as to abrogate the state's Eleventh Amendment immunity. See El Badrawi, 579 F. Supp.2d at 261. This court agrees with the reasoning of the other courts in this circuit.

Accordingly, as damages are the only remedy left to the plaintiff and damages cannot be recovered against the defendants in their individual or official capacities, the defendants' motion to dismiss is granted as to the RLUIPA claims.

E.   <u>Qualified Immunity</u>

The defendants contend that they are protected by qualified immunity with regard to all claims based on the plaintiff's alleged religion and classification at Northern Correctional Institution.  The court assumes that these claims are embodied in counts 1, 3 and 9, the first two dealing with the plaintiff's right to freely practice his religion and the last alleging harassment and retaliation based on his religious beliefs. In addition, count 5 states that the plaintiff was improperly classified as a gang member because of his religious beliefs.

Government officials performing discretionary functions are protected from liability for civil damages unless their conduct violated a clearly established statutory or constitutional right of which a reasonable person would have been aware.  <u>See</u> <u>Pearson</u> <u>v. Callahan</u>, 555 U.S. 223, 231 (2009).  The constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," although the exact issue need not have been previously decided. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).  To establish a defense of qualified immunity, the defendant must establish that his acts did not violate a constitutional right or, if there was such a violation, that the right was not clearly established at the time of the incident.  <u>See</u> <u>Pearson</u>, 555 U.S. at 232-33 (setting forth qualified immunity test and holding that a court

11

need not consider the questions in any particular order).  To evaluate whether a right is clearly established, the court must determine whether it would be clear to a reasonable correctional official that his conduct in these circumstances was unlawful. See Saucier v. Katz, 533 U.S. 194, 202 (2001).  The analysis focuses on cases from the Supreme Court and second circuit.  See Williams v. Greifinger, 97 F.3d 699, 706 (2d Cir. 1996).

The plaintiff alleges that the defendants have violated his right to freely practice his religion, known as Creativity or the Church of the Creator.[1]  To date, no court considering a First Amendment claim, has recognized this organization as a religion. Rather, the courts view Creativity or the Church of the Creator as a white supremacist organization.  See, e.g., Gaustad v. Deppisch, 246 Fed. App'x 392 (7th Cir. 2007) (dismissing as frivolous claim of prisoner whose literature from Creativity was confiscated as gang literature posing a security threat); Prentice v. Nevada Dep't of Corrections, No. 3:09-cv-0627-RCJ-VPC, 2010 WL 4181456, at *3-4 (D. Nev. Oct. 19, 2010) (holding that Church of the Creator is a vehicle for white segregation, not a religion); Conner v. Tilton, No. C 07-4965 MMC (PR), 2009

---

[1] Originally known as the Church of the Creator, the organization lost the right to use that name in a trademark violation action, TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of the Creator, 297 F.3d 662 (7th Cir. 2002), cert. denied, 537 U.S. 1111 (2003), and now sometimes refers to itself as Creativity.  Prentice v. Nevada Dep't of Corrections, 2010 WL 4181456, at *3 n.3 (D. Nev. Oct. 19, 2010).

WL 4642392 (N.D. Cal. 2009)(finding Creativity or Church of the
Creator is not a religion as defined in Africa v. Pennsylvania,
662 F.2d 1025 (3rd Cir. 1981)); Byrne v. Biser, Civil Action No.
06-249J, 2007 WL 3120296 (W.D. Pa. Oct. 23, 2007) (dismissing
claim challenging denial of Creativity text as advocating racial
hatred).

The court need not, at this time, determine whether the
Church of the Creator or Creativity is a religion.  Even if it
were, that characterization was not clearly established at the
time of the incidents giving rise to this action.  Neither the
Supreme Court nor the Second Circuit have addressed the issue.
No district court within this circuit has considered the issue.
Of the other federal courts throughout the country, no court has
held that the Church of the Creator or Creativity is a religion
under the First Amendment.[2]  In addition, the state court has
upheld the Department of Correction's decision in denying the
plaintiff some of his "religious" materials on the ground that
the materials are inflammatory and threaten the security of the
correctional facility.  The state court held that correctional

---

[2] The only case to find that Creativity qualified as a
religion was decided in the context of an employment
discrimination case filed under Title VII of the Civil Rights Act
of 1964.  See Peterson v. Wilmur Commc'ns, Inc., 205 F. Supp.2d
1014, 1021-24 (E.D. Wis. 2002).  The standard applied under Title
VII, however, is broader than the standard applied in First
Amendment cases.  Compare id. at 1017-18 with Africa v.
Pennsylvania, 662 F.2d 1025, 1032 (3d Cir. 1981).

staff had the discretion to determine which of the plaintiff's religious publications would be permitted.  See Barletta v. Warden, No. CV 000596675S, 2000 WL 1227314, at *1 (Conn. Super. Ct. Aug. 9, 2000).

This court concludes that, under these circumstances, no reasonable correctional official would understand that his actions violated the plaintiff's constitutional rights.  The defendants' motion to dismiss is granted as to all claims based on the defendants' denial of "religious" materials or their actions after characterizing those materials as gang-related or threatening to the safety and security of the facility.

F.    Remaining Claims

In addition to the claims specifically addressed by the defendants in their motion to dismiss, the plaintiff includes four other counts in his amended complaint.  To the extent that these claims are premised on the plaintiff's religion, the defendants are entitled to qualified immunity on these claims as well.  To the extent that the claims may be seen as distinct from the plaintiff's religious claims, the court concludes that these claims should be dismissed.

Pursuant to 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary

14

relief from a defendant who is immune from such relief.  Id.  The court assumes the truth of the allegations, and interprets them liberally to "raise the strongest arguments [they] suggest[]." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  See Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

      1.   Property Claims

In his tenth count, the plaintiff contends that he was denied due process because defendant Kitt lost or destroyed his personal property.

Claims for deprivation of property, negligent or intentional, do not rise to the level of constitutional violations.  The Supreme Court has found that the Due Process Clause is not violated where a prison inmate loses personal belongings due to the negligent or intentional actions of correctional officers, if the state provides an adequate post-deprivation compensatory remedy.  See Hudson v. Palmer, 468 U.S.

517, 531 (1984); <u>Parratt v. Taylor</u>, 451 U.S. 527, 543 (1981),

<u>overruled in part on other grounds</u> <u>Daniels v. Williams</u>, 474 U.S.

327 (1986).

The State of Connecticut provides an adequate remedy for the

kind of deprivation the plaintiff describes.  <u>See</u> Conn. Gen.

Stat. § 4-141 et seq. (providing that claims for payment or

refund of money by the state may be presented to the Connecticut

Claims Commission).  Claims also may be presented to the

Department of Correction Lost Property Board.  The state remedy

is not rendered inadequate simply because the plaintiff

anticipates a more favorable remedy under the federal system or

because it may take a longer time under the state system before

his case is resolved.  <u>See</u> <u>Hudson</u>, 468 U.S. at 535.  Accordingly,

any due process claim based on the loss of property is dismissed

pursuant to 28 U.S.C. § 1915A.

    2.   <u>Equal Protection Claim re: Magazines</u>

In his sixth count, the plaintiff contends that he was

denied equal protection of the laws because his music magazine,

distributed by Resistance Rock Records, was determined to be a

threat to institutional safety and security and confiscated.  He

alleges that rap magazines containing articles on drugs, violence

and sex that are distributed by other companies were not banned

from the facility.  He states that he brings this claim under a

"class of one" theory.

To state a valid equal protection "class of one" claim, the plaintiff must allege (1) that he has been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference in treatment. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).  To prevail on a "class of one" claim, the plaintiff must allege an "extremely high" level of similarity with the person to whom he is comparing himself. <u>Neilson v. D'Angelis</u>, 409 F.3d 100, 104 (2d Cir. 2005). The plaintiff's circumstances must be "prima facie identical" to the other person's. <u>Id.</u> at 105.

The plaintiff alleges that he was told that the publisher was banned under Northern Correctional Institution policy.  The plaintiff has failed to allege facts suggesting that any other inmate was permitted to receive publications from a banned publisher.  Thus, he has not identified any person with a high degree of similarity to support a class of one equal protection claim. <u>See</u> <u>Page v. Lantz</u>, No. 3:03cv1271(MRK), 2007 WL 1834519, at *6 (D. Conn. June 25, 2007) (holding that class of one equal protection claim failed as a matter of law where plaintiff did not allege that similarly situated inmates were treated differently under similar circumstances).  The equal protection claim is dismissed pursuant to 28 U.S.C. § 1915A.[3]

_____

[3]In his memorandum in opposition to the motion to dismiss, the plaintiff attempts to characterize this claim as censorship. In the amended complaint, however, he specifically states the

3.   Correspondence

In his eighth count, the plaintiff argues that he was denied his First Amendment right to communicate with friends and family when his letters were confiscated.

"In the First Amendment context, ... a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication); see also Thornburgh v. Abbott, 490 U.S. 401 (1989) (evaluating regulations governing receipt of subscription publications by federal prison inmates).  Prisoners, therefore, have a First Amendment right to communicate with friends and family only to the extent that such communication is not inconsistent with their status as prisoners or with legitimate penological objectives.

The plaintiff alleges that the defendants have interfered with his incoming and outgoing social mail to friends and family. He does not allege, however, that he was not permitted to contact these persons by phone or through visits.  Because the plaintiff

---

claim as a class of one equal protection claim.  The plaintiff cannot amend his allegations in his memorandum. See Wright v. Ernst & Young LLP, 153 F.3d 169, 178 (2d Cir. 1998).

had other means to contact his family and friends, he fails to
state a constitutional violation.  See Higgs v. Suey, Civil No.
07-5158(RMB), 2008 WL 699594, at *6 (D.N.J. Mar. 12, 2008);
accord Pino v. Dalsheim, 558 F. Supp. 673, 675 (S.D.N.Y. 1983)
(holding that, where an inmate was permitted only two eight-
minute telephone calls per month to family, friends or attorneys,
denial of telephone access is not necessarily a constitutional
violation if inmate has mail privileges).  The plaintiff's First
Amendment claim for interference with correspondence is dismissed
pursuant to 28 U.S.C. § 1915A.

4.  Access to Courts

Finally, in his seventh count, the plaintiff contends that
the defendants violated his right of access to the courts when
they confiscated documents related to this action.

It is well settled that inmates have a First Amendment right
of access to the courts.  Bounds v. Smith, 430 U.S. 817, 828
(1977), modified on other grounds by Lewis v. Casey, 518 U.S.
343, 350 (1996).  To state a claim for denial of access to the
courts, the plaintiff must demonstrate that the defendants acted
deliberately and maliciously and that he suffered an actual
injury. See Lewis, 518 U.S. at 353.

To establish an actual injury, the plaintiff must allege
facts showing that the defendants took or were responsible for
actions that hindered his efforts to pursue a legal claim,

19

prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts.  See Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 2002).  For example, the plaintiff could demonstrate an actual injury by providing evidence "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of the deficiencies in the prison's legal assistance facilities, he could not have known."  Lewis, 581 U.S. at 351.

Clearly, the plaintiff was able to file this case and has filed motions and other documents complete with exhibits.  The court concludes that the plaintiff fails to allege any facts demonstrating an actual injury to support his claim of denial of access to the courts.  See Thomas v. Egan, 1 Fed. App'x 52, 54 (2d Cir. 2001) (confiscation of legal documents insufficient to demonstrate violation of right of access to the courts absent showing of actual injury).  The claim for denial of access to the courts is dismissed pursuant to 28 U.S.C. § 1915A.

### Conclusion

The defendants' motion to dismiss [**Doc. #73**] is **GRANTED**. The remaining claims in the amended complaint that were not addressed in the motion to dismiss, denial of property, denial of access to the courts, denial of equal protection and denial of right to correspond, are **DISMISSED** pursuant to 28 U.S.C. § 1915A.

The plaintiff's motion for preliminary injunction [**Doc. #61**]

is **DENIED** as moot because the plaintiff is now confined in Oregon.

The plaintiff's motion for summary judgment [**Doc. #60**] is **DENIED** as moot in light of the dismissal of this action.

The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED** at Hartford, Connecticut this *15*TH day of February 2013.

Alfred V. Covello
United States District Judge